UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| SANDRA K. STEPHENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-CV-113-DCP |
| | ) | |
| KILOLO KIJAKAZI[1], | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 13].  Now before the Court are

Plaintiff's Motion for Judgment on the Pleadings [Doc. 20] and Defendant's Motion for Summary

Judgment [Doc. 23].[2]  Sandra K. Stephenson ("Plaintiff") seeks judicial review of the decision of

the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the

Commissioner").  For the reasons that follow, the Court will **GRANT** Plaintiff's motion **IN PART**

and **DENY** the Commissioner's motion.

**I.      PROCEDURAL HISTORY**

Plaintiff initially filed an application for disability insurance benefits on March 24, 2014,

alleging disability beginning on October 28, 2013.  *See* [Tr. 15].  On March 23, 2016, ALJ Thomas

Sanzi issued an unfavorable decision, finding that Plaintiff was not under a disability, as defined

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

[2] Plaintiff also filed a Reply [Doc. 25] to the Commissioner's Motion for Summary
Judgment on March 24, 2021.

in the Social Security Act, from October 28, 2013 through the date of the decision. [Tr. 131–48]. The Appeals Council denied Plaintiff's request for review on March 7, 2017. [Tr. 153–56].

On April 13, 2017, Plaintiff again protectively filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., claiming a period of disability that began on March 24, 2016. [Tr. 15, 221].[3] After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 169–70]. A hearing was held on October 19, 2018. [Tr. 32–59]. On January 17, 2019, ALJ Carey Jobe found that Plaintiff was not disabled. [Tr. 15–26]. The Appeals Council denied Plaintiff's request for review on March 3, 2020 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on May 1, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity during the period from her alleged onset date of March 24, 2016 through her date last insured of December 31, 2018 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following "severe" impairments: degenerative disc disease of the lumbar

---

[3] While the ALJ's Hearing Decision notes that Plaintiff filed her Title II application on April 12, 2017 [Tr. 15], Plaintiff's Application for Disability Insurance Benefits reflects the filing date of April 13, 2017. [Tr. 221].

2

spine, hearing loss, irritable bowel syndrome ("IBS"), obesity, depressive disorder, neurocognitive disorder, and posttraumatic stress disorder ("PTSD"). (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant must avoid climbing ladders, ropes, and scaffolds. She could perform occasionally [sic] balance, stoop, kneel, crouch, or crawl. The claimant must avoid concentrated exposure to industrial-level background noise and concentrated exposure to industrial hazards such as unprotected heights and moving machinery. The claimant was limited to simple, routine, repetitive tasks, and must have no more than occasional interaction with the public, coworkers, and supervisors. Finally, the claimant must have no more than occasional change in the work routine.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 21, 1968 and was 50 years old, which is defined as a younger individual age 18-49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

3

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 24, 2016, the alleged onset date, through December 31, 2018, the date last insured (20 CFR 404.1520(g)).

[Tr. 18–26].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).  It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).  Rather, substantial

4

evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

5

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's disability determination is not supported by substantial evidence in several regards, that the ALJ erred in failing to properly evaluate the July 29, 2014

6

consultative examination opinion of Dr. Mullady, and that the ALJ erred in failing to limit Plaintiff to sedentary work. First, in terms of her argument that the ALJ's decision is not supported by substantial evidence, Plaintiff asserts that the ALJ failed to properly evaluate and account for certain impairments and conditions in the RFC finding, including her irritable bowel syndrome, hearing impairment, lumbar spine impairments, and obesity. Next, Plaintiff argues that the ALJ's decision lacks the support of substantial evidence because he mischaracterized Dr. Mullady's opinion as a psychological evaluation and "clearly fails to properly consider or evaluate the evidence from Dr. Mullady." [Tr. 22 at 9]. Finally, Plaintiff maintains that the substantial weight of the evidence supports a finding of "sedentary work at most" rather than light work as determined by the ALJ, "which would result in a favorable decision dating back to [Plaintiff's] 50th birthday, on March 21, 2018." [Tr. 22 at 21].[4] The Court will first address the ALJ's evaluation of the Plaintiff's medical impairments and conditions and then analyze the ALJ's treatment of Dr. Mullady's opinion and the RFC finding.

    A.    ALJ's Evaluation of Plaintiff's Medical Impairments and Conditions

        1.    **Irritable Bowel Syndrome**

Plaintiff contends that the ALJ failed to properly evaluate and account for her Irritable Bowel Syndrome ("IBS") in the RFC determination. Plaintiff asserts that while the ALJ found her IBS to be a severe impairment, "he failed to include any limitations whatsoever in his RFC finding to account for this severe impairment and its related symptoms and limitations." [Doc. 22 at 10]. Plaintiff points to her testimony that her IBS worsened, as well as that she needed frequent

---

[4] As noted by the Commissioner, the possibility of Plaintiff being found disabled via direct application of medical-vocational (grid) rule 201.10 would depend "on whether or not she had transferable skills." 20 C.F.R. pt. 404, subpt. P, app.2, Table 1, Rule 201.10. [Tr. 18 at 20–21 n. 4].

bathroom breaks and rarely left her home due to her IBS. Plaintiff maintains that her IBS would cause her to be off task during the workday due to the need for frequent breaks, as well as that she would require quick access to a restroom. Additionally, Plaintiff asserts that the ALJ improperly found that her abdominal pain, diarrhea, and bloating improved with medication.

The Commissioner responds [Doc. 24 at 11–12] that the ALJ considered Plaintiff's IBS but did not find it to be as limiting as Plaintiff reported. Further, the Commissioner maintains that the ALJ appropriately cited to the record to support his finding that Plaintiff's IBS improved with medication. Plaintiff replies that "[w]hether or not the ALJ intentionally mischaracterized the evidence regarding [her] improvement with medications, a review of the evidence shows that this improvement was not significant and/or short-lived." [Doc. 25 at 3]. Additionally, Plaintiff asserts that the Commissioner fails to point to "a single limitation in the RFC finding that accounts for the limitations" that she experiences due to her IBS. [*Id.*].

As Plaintiff details, the ALJ found Plaintiff's IBS to be a severe impairment at Step Two of the disability decision. [Tr. 18]. During the RFC determination, the ALJ specifically discussed Plaintiff's IBS and found that "treatment notes showed that her abdominal pain, diarrhea, and bloating had improved with medications such as Elavil and hyoscyamine [*sic*]." [Tr. 22]. In support, the ALJ cited to a March 10, 2017 treatment note with Plaintiff's gastroenterologist, George Phillips, M.D., who noted that Plaintiff was suffering from likely IBS with diarrhea associated with bloating, but that it was "improved on [E]lavil." [Tr. 541]. Additionally, the March 10, 2017 treatment note reflected that Plaintiff's abdominal pain improved with intermittent hyoscamine use. [*Id.*]. In the disability decision, the ALJ specifically cited the notations that Plaintiff "improved on Elavil" and "improved with intermittent hyoscyamine [*sic*] use." [Tr. 22]. Therefore, the ALJ found that "[e]ven when coupled with her morbid obesity . . . there is little

8

evidence to support more than light exertional or physical restrictions." [*Id.*].

In the disability decision, the ALJ also noted Plaintiff's testimony that she needed frequent bathroom breaks and rarely left her home due to her IBS. [Tr. 21]. However, the ALJ found Plaintiff's medically determinable impairments "could reasonably be expected to have caused only a portion of the alleged symptoms," and therefore Plaintiff's "statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record." [Tr. 22]. The ALJ found that "the record does not demonstrate an inability for the claimant to work," and subsequently proceeded to specifically discuss Plaintiff's IBS, as addressed above. [*Id.*].

Plaintiff claims that the ALJ's statement that her abdominal pain, diarrhea, and bloating improved with medication is a mischaracterization of the record. Plaintiff asserts that Dr. Phillips' treatment notes "show some improvement with treatment" but also "ongoing diarrhea occasionally awakening her and worse in the morning," continued complaints of abdominal pain, and an increased dosage. [Doc. 22 at 12]. Dr. Phillips' March 10, 2017 treatment note reflects that Plaintiff reported diarrhea awakening occasionally, which was worse in the morning but improved with Elavil. [Tr. 538]. Additionally, Plaintiff's Elavil was increased to 20 milligrams at night, a "FODMAP diet for the bloating was assessed," and Dr. Phillips stated that if ineffective, a treatment for SIBO may need to be considered. [Tr. 541].[5]

The Court finds that the ALJ appropriately considered Plaintiff's IBS as a severe impairment and detailed why additional limitations were not necessary in the RFC determination. The ALJ properly supported his conclusion that Plaintiff's diarrhea, bloating, and abdominal pain

_____

[5] Plaintiff indicated that SIBO is a notation for Small Intestinal Bacterial Overgrowth. [Doc. 22 at 12].

9

had improved through medication by citing to a specific treatment note in the medical record. Plaintiff does not point to any medical opinion regarding being off-task during the workday or requiring special accommodations due to frequency or length of unscheduled restroom breaks; rather, she relies on the same March 10, 2017 treatment record and her own testimony. Here, the Court is reliant on the substantial evidence standard. The ALJ's analysis with respect to Plaintiff's improvement with medication was within his "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal quotation omitted).

Ultimately, the Court does not find that the ALJ mischaracterized Dr. Phillips' conclusion regarding Plaintiff's improvement with treatment, and thus the ALJ's RFC determination with respect to Plaintiff's IBS is supported by substantial evidence. *See, e.g.*, *Hicks v. Berryhill*, No. 3:17-CV-176-HBG, 2018 WL 2074181, at *4 (E.D. Tenn. May 3, 2018) (finding the ALJ did not err by failing "to include any limitations into the RFC that accommodated the impairment [of IBS], such as bathroom breaks, working in close proximity to a bathroom, or being off-task due to frequent use of the bathroom" despite finding it to be a severe impairment); *Patterson v. Colvin*, No. 13-CV-1040-JDB-TMP, 2016 WL 7670058, at *11 (W.D. Tenn. Dec. 16, 2016) (finding the ALJ did not err by failing to include additional limitations in the RFC based on IBS as the ALJ considered it in the RFC analysis but "the ALJ's decision not to include further limitations in Patterson's RFC on account of her IBS and diarrhea is reasonable and supported by substantial evidence"), *report and recommendation adopted by* 2017 WL 95462 (W.D. Tenn. Jan. 10, 2017).

### 2. Hearing Impairment

Plaintiff similarly contends that the ALJ failed to properly account for her hearing loss in the RFC determination despite finding it to be a severe impairment. Plaintiff states that the prior

10

unfavorable disability decision found her hearing loss to be a severe impairment, but that the ALJ in the current case improperly found that she "has less hearing limitations and restrictions than she had previously without providing any rationale for this finding or even addressing it in his decision." [Doc. 22 at 13]. In particular, Plaintiff reviews the prior disability decision and notes it "had an RFC finding that included no exposure to excessive noise, and no fine hearing capability," while the current RFC "only includes avoidance of concentrated exposure to industrial-level background noise" with regard to Plaintiff's hearing limitations. [*Id.* at 14].

The Commissioner responds that "the period under consideration in this case was March 24, 2016 through December 31, 2018." [Doc. 24 at 13]. Therefore, the Commissioner asserts that the ALJ properly acknowledged that he was not bound by the prior ALJ's determination, made new findings, and the record did not support limitations beyond those found by the ALJ in the RFC determination. Plaintiff replies "the fact that the ALJ is only deciding whether Ms. Stephenson was disabled during this period . . . does not mean that the ALJ is not required to consider evidence from before or after that time period, as long as it is relevant to that time period." [Doc. 25 at 3–4]. Further, Plaintiff asserts that "whether or not her hearing has actually worsened or not, it certainly has not improved, and there is no explanation for a decrease or removal of limitations and restrictions in her RFC finding to account for hearing impairment." [*Id.* at 4].

As detailed above, the previous ALJ's RFC determination limited Plaintiff to a range of light work, including avoiding concentrated exposure to excessive noise and a limitation to occupations that do not require fine hearing capability. [Tr. 137]. In the current disability decision, the ALJ found that Plaintiff's hearing loss was a severe impairment and limited her to jobs with avoidance to concentrated exposure to industrial-level background noise. [Tr. 21]. However, the ALJ specifically addressed the previous disability decision, citing to Acquiescence Ruling ("AR")

98-4(6) and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), and finding that "the record contains new and material evidence," and therefore the ALJ was "not bound by the findings regarding the claimant's functional limitations from the March 23, 2016 unfavorable decision and entirely new findings have been made." [Tr. 15].

The Sixth Circuit has directed that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Drummond*, 126 F.3d at 842. Following *Drummond*, the Commissioner issued AR 98-4(6), which provides, in part:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

Social Security Acquiescence Ruling 98–4(6), 1998 WL 283902, at *3 (June 1, 1998).

However, the Sixth Circuit recently clarified the meaning of *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018), explaining how "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory condition." *Id.* at 932. Therefore, res judicata does not "prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.* at 931.

First, the Court notes that this argument could have been deemed waived, as Plaintiff fails to cite to any applicable regulations or case law during the argument section of her brief. Regardless, although Plaintiff cites to the ALJ's findings and her testimony, she does not support

12

her claim that the ALJ failed to account for her hearing impairment in the RFC finding. Most telling in the current section is that Plaintiff fails to provide analysis under *Drummond*, *Earley*, or AR 98-4(6)), although Plaintiff cited to *Drummond* and AR 98-4(6) in arguing that the ALJ improperly failed to limit her to sedentary work. [Doc. 22 at 22].

Next, the Court agrees with the Commissioner's argument that substantial evidence supports the ALJ's RFC determination with respect to the limitation to avoid concentrated exposure to industrial-level background noise. The Court finds that the ALJ appropriately decided that the presence of new and material evidence enabled him to give a fresh look to Plaintiff's disability application. The ALJ acknowledged that Plaintiff requires the use of a hearing aid in her "right ear with decreased auditory acuity reported during a consultative examination." [Tr. 22]. However, the ALJ found that avoiding concentrated exposure to industrial-level background noise provided adequate restriction for this impairment. [*Id.*].

For context, "[c]ourts applying *Earley* to ALJ decisions issued before that case have asked whether the ALJ, despite purporting to follow *Drummond*, gave the new evidence a fresh look. If so, then the ALJ's decision satisfied *Earley*; if not, then remand was appropriate." *Johnson v. Comm'r of Soc. Sec.*, No. 2:17-cv-13126, 2018 WL 6440897, at *15 (E.D. Mich. Oct. 22, 2018) (collecting cases), *report and recommendation adopted by* 2018 WL 6434778 (E.D. Mich. Dec. 07, 2018). As the application in this case involved a different period of disability, accompanied by new evidence in the medical record, the ALJ appropriately gave the evidence a "fresh look." *Earley*, 893 F.3d at 931. Plaintiff has not established that the ALJ was required to adopt the previous hearing limitations in the RFC determination, and thus is not entitled to remand on this argument.

13

### 3. Lumbar Spine Impairment

Plaintiff asserts that the ALJ failed to properly evaluate her lumbar spine impairments and mischaracterized the severity of these impairments in the disability decision. Plaintiff cites to a July 11, 2017 x-ray where Dr. Avinash Sud noted congenital right-sided hemivertebra between L2 and L3 resulting in approximately 10 degrees dextroscoliosis of the lumbar spine, as well as severe disc degeneration and facet joint osteoarthritis at the L5-S1 level. [Tr. 580]. However, in the disability decision, the ALJ "acknowledge[d] that a radiological study of the lumbar spine in June 2017 showed disc degeneration and facet joint arthritis." [Tr. 22].

Plaintiff also challenges the ALJ's finding that there was little objective evidence in the medical record to substantiate the allegations of disabling impairments, and "while entirely new findings are made, the record reveals little change that would warrant a significantly different finding from the prior decision." [Tr. 23]. The ALJ also found that Plaintiff's sleep apnea was a new medical impairment, but Plaintiff's other medical impairments had not progressed significantly. Plaintiff claims that "the record at the time of the prior decision did not include any such objective imaging of [her] lumbar spine that represents extremely significant, objective evidence confirming the severity of her lumbar spine impairment that would be expected to produce her alleged symptoms and related limitations." [Doc. 22 at 16]. Lastly, Plaintiff alleges that the ALJ improperly discounted consultative examiner Stephen K. Goewey, M.D.'s opinion by stating that the opined sitting, standing, and walking restrictions were "somewhat excessive in view of a normal knee x-ray and moderate lumbar findings." [Tr. 23].

The Commissioner responds that "[w]hile it is true that [the] ALJ appears to have summarized the findings from this diagnostic image, and omitted some of the descriptive terms, it does not automatically point to an attempt to mischaracterize or misrepresent the record as Plaintiff

14

suggests, and the ALJ is not bound to include all of those terms in a summary of the report." [Doc. 24 at 14]. Plaintiff replies that the severe disc degeneration in the cited x-ray report does not constitute moderate lumbar findings, as well as that the ALJ did not summarize the overall findings but "specifically referenced the radiology report without noting the 'severe' aspects of it, and where he later characterized the lumbar findings as 'moderate.'" [Doc. 25 at 4–5].

As discussed above, when reviewing Plaintiff's lumbar degenerative disease, the ALJ cited to the July 11, 2017 x-ray report. [Tr. 22]. Next, the ALJ noted that Plaintiff "often reported decreased range of motion and objective assessments documented some gait instability." [*Id.*]. However, the ALJ immediately proceeded to find that "[d]espite this, the record does not show that the claimant underwent any aggressive form of treatment such as surgery for her lumbar disorder," and "[m]oreover, she demonstrated negative results on various straight leg raise exams." [*Id.*]. The ALJ also detailed that Plaintiff does not require the use of an assistive device to ambulate, there are no reports of balance issues due to gait disturbance, and Plaintiff showed full extension bilaterally in her shoulders despite her allegations—while providing specific citations to the medical record in support. [*Id.*].

With respect to Dr. Goewey's opinion, the ALJ noted that Dr. Goewey determined that Plaintiff had the capacity to sit four to five hours daily, stand and walk at least three hours, and lift and carry 20 to 30 pounds occasionally. [Tr. 23]. However, the ALJ assessed that "the restriction as to sitting, standing and walking is somewhat excessive in view of a normal knee x-ray and moderate lumbar findings." [*Id.*]. Therefore, the ALJ found that "the record supports a somewhat greater capacity to perform these functions for 6 hours, each, with normal breaks," while also citing to Plaintiff not requiring the use of an assistive device, no reports of balance issues due to gait disturbance, and full extension bilaterally in her shoulders. [*Id.*].

15

The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence, deciding questions of credibility, or substituting the court's judgment for that of the ALJ. *See Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007). Plaintiff correctly states that while the ALJ cited to the July 11, 2017 x-ray, he did not include the notation of severe disc degeneration. However, the ALJ cited to this x-ray report as a portion of the medical record in support of limitations stemming from Plaintiff's lumbar degenerative disease. The ALJ proceeded to cite to portions of the medical record which did not support disabling limitations from Plaintiff's disc degeneration, with specific citations to the medical record. Plaintiff does not challenge the ALJ's cited reasoning here, but rather bases her argument on the ALJ's alleged mischaracterization of the medical record. The Court finds that the disability decision shows that the ALJ appropriately considered the radiology report but provided his reasoning for not finding disabling limitations. The ALJ provided similar reasoning when discussing Dr. Goewey's opinion.

Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

16

### 4. Obesity

Plaintiff alleges that the ALJ failed to properly consider her obesity in accordance with Social Security Ruling 02-01p. Plaintiff asserts that the ALJ's failure to properly evaluate her obesity was especially significant given her severe physical impairments. Plaintiff contends that "the ALJ failed to make any specific analysis or findings regarding [her] obesity in his decision, and he also inconsistently characterized the severity of her obesity in his decision." [Doc. 22 at 17].

Social Security Ruling 02-1p instructs ALJs to consider the effects obesity may have on a disability claimant throughout the sequential evaluation. 2002 WL 34686281, at *4–7 (Sept. 12, 2002).[6] Additionally, SSR 02-1p provides that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id.* at *6. The Sixth Circuit has instructed that:

> Obesity commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems . . . The ALJ also must specifically take into account the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment, and consider how fatigue may affect the individual's physical and mental ability to sustain work activity . . . .

*Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) (internal citations and quotation marks omitted).

In the disability decision, the ALJ first found Plaintiff's obesity to be a severe impairment and during Step Three stated that "although the claimant was mildly to moderately obese . . . [p]er SSR 02-1p, neither the overall evidence nor testimony in this case supports or suggests any

---

[6] SSR 02-1p was rescinded and replaced by Social Security Ruling 19-2p, effective May 20, 2019. *See* 2019 WL 2161798 (May 20, 2019). Here, because Plaintiff filed her claim prior to this date, SSR 02-1p is still applicable in this case. *See, e.g.*, *Long v. Comm'r of Soc. Sec.*, No. 2:18-CV-00597, 2019 WL 3406431, at *10 (S.D. Ohio July 29, 2019).

17

complications from obesity, nor any obesity related conditions." [Tr. 20]. In the RFC determination, the ALJ found that Plaintiff's "lumbar impairment, in combination with morbid obesity, limit[s] postural maneuvers to no more than occasional," as well as that Plaintiff's "[s]leep apnea, again considered with obesity, impairs hazard awareness, so the claimant should have performed no climbing of ladders, ropes, or scaffolds and should have avoided concentrated industrial hazards." [Tr. 24]. Lastly, the ALJ noted that obesity had been considered at all stages pursuant to SSR 02-1p. [*Id.*].

Plaintiff cites to portions of the medical record she claims established her morbid obesity, including a BMI over 43 and a weight gain of approximately fifty-six pounds between February 2016 and October 2017. [Tr. 594–600]. Additionally, Plaintiff claims that Dr. Goewey noted the limited range of motion of the back, hip, and knees in the consultative examination, including specifically noting that Plaintiff's limited hip range of motion was "secondary to body habitus." [Tr. 577]. Plaintiff also cites to the notation that she had gained about sixty pounds in the last year and a half, as well as walked slow and displayed a shuffling gait, in her consultative psychological examination with Adam D. Arsenault, Psy.D. [Tr. 582–83]. Further, Plaintiff asserts that the ALJ made internally inconsistent references to her obesity, by first noting she was mildly to moderately obese [Tr. 20], and then finding that "[e]ven when coupled with her morbid obesity [while discussing Plaintiff's IBS], there is little evidence to support more than light exertional or physical restrictions." [Tr. 22]. Lastly, Plaintiff claims that the ALJ's finding that the medical record does not support any complications from obesity is contrary to Dr. Goewey's examination findings.

"Pursuant to SSR 02-1p, an ALJ must consider the functional limitations resulting from a medically determinable impairment of obesity in the RFC assessment, in addition to limitations resulting from any other physical or mental impairment." *Rinker v. Comm'r of Soc. Sec.*, No. 1:16-

18

CV-376-SKL, 2017 WL 2789440, at *4 (E.D. Tenn. June 27, 2017). The Sixth Circuit has held, however, that SSR 02-1p does not require "any particular procedural mode of analysis for obese disability claimants." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006)). Rather, it provides that "obesity, in combination with other impairments, 'may' increase the severity of other limitations." *Id.* (quoting *Bledsoe*, 165 F. App'x at 412). Obesity should be considered on a case-by-case basis because it "may or may not increase the severity or functional limitations of the other impairment." SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002).

The ALJ found Plaintiff's obesity to be a severe impairment, specifically stated that he considered her obesity under SSR 02-1p and detailed how Plaintiff's obesity—in combination with other impairments—did not result, in any specific work-related functional limitations. Again, the Court finds that the ALJ's findings regarding Plaintiff's obesity were within his zone of choice, and the ALJ was not required to accept Dr. Goewey's opinion. Accordingly, the Court finds that the ALJ appropriately considered Plaintiff's obesity under Social Security Ruling 02-1p. Ultimately, "[a]n ALJ's explicit discussion of the plaintiff's obesity indicates sufficient consideration of [her] obesity." *Swafford v. Berryhill*, No. 1:18-CV-5, 2019 WL 1332368, at *3 (E.D. Tenn. Mar. 25, 2019) (citing *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010)).

Plaintiff asserts that the ALJ's alleged failure to properly consider Plaintiff's obesity "is made clear when a comparison is made between the prior ALJ's decision and RFC finding" and the current disability decision. [Doc. 22 at 18]. However, as detailed above, the ALJ was not required to accept the previous ALJ's findings and properly determined a new RFC. Moreover, the ALJ appropriately detailed why Dr. Goewey's assessed limitations were not entirely consistent

19

with the medical record. Further, the ALJ incorporated several medical opinions that specifically reviewed Plaintiff's obesity into the RFC determination. In *Bledsoe*, the Sixth Circuit offered practical assistance in applying SSR 02-01p, finding that the ALJ had properly considered the claimant's obesity by making "explicit mention of [the claimant's] obesity in his finding of facts" and by "credit[ing] an expert's report that considers obesity." *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006); *see also Coldiron*, 391 F. App'x at 443 ("Given the ALJ's discussion of Coldiron's obesity throughout his findings of fact and the ALJ's use of RFCs from physicians who explicitly considered Coldiron's obesity, we find that the ALJ adequately accounted for the effect that obesity has on Coldiron's ability to perform sedentary work."). Therefore, Plaintiff's allegations of error regarding the ALJ's treatment of her obesity do not constitute a basis for remand.

### B. ALJ's Treatment of Dr. Mullady's Opinion and RFC Finding

Plaintiff asserts that the ALJ failed to properly evaluate the opinion of the consultative examiner from her previous Title II application in the disability decision and that the ALJ erred by failing to limit her to sedentary work, which would result in a disability finding.

The medical record includes a consultative medical examination conducted by Thomas F. Mullady, M.D., on July 29, 2014. [Tr. 503]. Dr. Mullady noted that Plaintiff alleged low back pain, stated that she had been diagnosed with lumbar disc disease, and exhibited a mild decrease in range of motion of the lumbar spine on physical examination. [Tr. 505]. Plaintiff stated that she had a history of hypoglycemia and myocardial infarction followed by coronary angioplasty, although she had no cardiac symptoms at the time. [*Id.*]. Additionally, Dr. Mullady stated that Plaintiff had a stroke two years ago but had no neurological deficits related to that event, as well as that Plaintiff was markedly obese and had decreased visual acuity partially compensated with

20

glasses. [*Id.*]. Therefore, Dr. Mullady opined that Plaintiff retained the capacity to occasionally lift and/or carry a maximum of ten pounds for up to one-third of an eight-hour workday; she would not be able to frequently lift and/or carry any weight for one-third to two-thirds of an eight-hour workday; she would be able to stand and/or walk with normal breaks for about two hours in an eight-hour workday; and that she would be able to sit with normal breaks for at least six hours in an eight-hour workday. [*Id.*].

In the disability decision, the ALJ stated that "[c]oncerning the prior *psychological* consultative examination, I am in agreement with the prior ALJ decision, which found the conclusions of [Dr. Mullady] unpersuasive and inconsistent with the collective evidence." [Tr. 24 (emphasis added)]. In support, the ALJ detailed that Dr. Mullady only examined Plaintiff on a single occasion and relied on her subjective reporting, and therefore, "[t]he overall record supports that through the date last insured the claimant was limited to simple, routine, repetitive tasks requiring no more than occasional interaction with the public, co-workers, and supervisors." [*Id.*]. Lastly, the ALJ stated that "[i]f so limited, no more than occasional changes in the work routine would have been tolerable." [*Id.*].

Plaintiff argues, and the Commissioner acknowledges, that the ALJ improperly characterized Dr. Mullady's opinion as a psychological, as opposed to a physical, consultative examination. Plaintiff maintains that Dr. Mullady's consultative examination and opinion "clearly ha[ve] no relation whatsoever to [Plaintiff's] mental impairments or psychological functioning." [Doc. 22 at 9]. Therefore, Plaintiff asserts that the ALJ's decision is not supported by substantial evidence as it is "inconsistent" and "misrepresents significant evidence." [*Id.* at 10].

The Commissioner responds that "Plaintiff is correct that the ALJ incorrectly described this report," but claims that "Plaintiff overstates the significance of this error as the report was

21

dated prior to the alleged onset date and not particularly relevant." [Doc. 24 at 19]. Here, the Commissioner relies upon the fact that Plaintiff's alleged disability date was March 24, 2016, and therefore claims that because Dr. Mullady's opinion "was dated approximately two years before the date Plaintiff alleges she became disabled, the report would not have been especially probative." [*Id.* at 20]. Lastly, the Commissioner claims that regardless of "the ALJ's inaccurate description" of Dr. Mullady's opinion, the ultimate RFC determination was supported by substantial evidence. [*Id.*].

Plaintiff replies that the ALJ is required under 20 CFR § 404.1520c to evaluate how persuasive he found all medical opinions of record and that Dr. Mullady's opinion would limit her to a reduced and limited range of sedentary work and remains relevant evidence to her condition after the examination. [Doc. 25 at 2]. Further, in Plaintiff's final argument of her brief, she asserts that the ALJ erred by failing to limit her to sedentary work, which would result in a disability finding. Plaintiff claims that "[s]uch a finding is warranted by the substantial evidence of record, including the updated imaging of her lumbar spine . . . as well as her obesity with a BMI over 40 . . . which exacerbates her other joint and back impairments, as well as her cardiac impairments and chronic knee pain." [Doc. 22 at 21]. Plaintiff contends "[t]his is particularly important in her case," as she changed age categories in March 2018, and therefore, "the only opportunity [she] will ever have for an award of Title II SSDI benefits" is the present application before the Court. [*Id.* at 21–22]. In support, Plaintiff claims that "[d]espite the new evidence documenting a significant worsening of [her] impairments and related limitations, including her lumbar degenerative disc disease, obesity, IBS, and knee and joint pain, the ALJ failed to materially decrease the exertional aspect of [the previous] RFC finding." [*Id.* at 22].

The Commissioner responds that Plaintiff's "argument is merely a request to re-evaluate or re-weigh the evidence in this case, and that is not appropriate." [Doc. 24 at 18]. Further, the Commissioner claims that the ALJ's holding that he would make new findings from the previous disability decision "does not automatically follow that the new finding(s) would be more restrictive than the prior ones." [*Id.*].

In accordance with the social security regulations, an ALJ is required to consider all relevant medical and other evidence in determining a claimant's RFC. 20 C.F.R. § 404.1520(e). On January 18, 2017, the Social Security Administration ("SSA") amended the rules for evaluating medical opinions for claims filed on or after March 27, 2017. The new regulations provide that SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, in adjudicating a claim, an ALJ must still "articulate how [s/he] considered the medical opinions and prior administrative medical findings." *Id.* There is no exception to that requirement for opinions that predate a claimant's onset date. *See id.* The Sixth Circuit has recognized, "evidence presented at an earlier hearing or predating the onset of disability, when evaluated *in combination with later evidence,* may help establish disability." *DeBoard v. Commissioner of Social Security,* 211 F. App'x. 411, 414 (6th Cir. 2006).

The regulations explain that "[n]o error in either the admission or the exclusion of evidence . . . by the ALJ . . . is grounds for vacating, modifying or otherwise disturbing an otherwise appropriate ruling . . ." 20 C.F.R. § 498.224. "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

23

right.' " *Rabbers v. Comm'r of Soc. Sec.,* 582 F. 3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F. 3d 742, 746 (6th Cir. 2007)).

Here, it is undisputed that the ALJ incorrectly described Dr. Mullady's report as a psychological evaluation, when in fact, it was an "All Systems [Medical] Examination." [Tr. 15 at 503; Tr. 24 at 19]. In his brief discussion of the opinion, the ALJ states, "I am in agreement with the prior ALJ decision, which found the conclusions of Thomas Mullady, M.D., unpersuasive and inconsistent with the collective evidence (Ex. B5F)." *Id.* While not suggesting that the ALJ's description of Dr. Mullady's evaluation was merely a harmless, typographical error, the Commissioner maintains that Dr. Mullady's opinion was not "especially probative" because it predates the period at issue and that substantial evidence nevertheless supported the ALJ's ultimate finding that Plaintiff was capable of performing work at a light exertional level. The Court cannot so conclude.

First, as previously discussed, § 404.1520(e) requires an ALJ to consider all relevant medical evidence in determining a claimant's RFC. Further, the Sixth Circuit has recognized that medical records predating a claimed disability are relevant when evaluated in combination with later evidence as they may assist in establishing a claimant's disability. *DeBoard* at 414. Thus, the Court disagrees with the Commissioner's contention that Dr. Mullady's opinion was essentially irrelevant because it predated the period at issue.

Second, without the benefit of the ALJ properly addressing Dr. Mullady's opinion, the Court is unable to meaningfully review his findings. In his report, Dr. Mullady opines that Plaintiff is capable of only sedentary work and, as acknowledged by the parties, if adopted, his opinion would lead to a finding of disability via direct application of the grid, depending on whether or not Plaintiff had transferable skills. While there was at least some attempt to address Dr. Mullady's

24

report by referencing agreement with the prior ALJ decision, finding "the conclusions of Thomas Mullady, M.D., unpersuasive and inconsistent with the collective evidence (Ex. B5F)", the remainder of the ALJ's discussion makes it unclear whether, in fact, he considered the report. This is because the remainder of the ALJ's brief discussion addresses mental limitations, which were not a part of Dr. Mullady's evaluation. While the ALJ may have considered Dr. Mullady's opinion relating to Plaintiff's exertional capabilities, it is not readily apparent, and the ALJ's undisputed mischaracterization of the opinion undermines his decision and deprives this Court of its ability to conduct meaningful review the ALJ's findings. Moreover, despite the ALJ's purported finding that Dr. Mullady's opinion was unpersuasive and unsupported, the ALJ's decision references and relies upon certain findings in Dr. Mullady's report and does so only to describe a lack of use of an assistive device to ambulate and no reports of balance issues. [Tr. 15 at 23].

In sum, the Court cannot determine whether or not the ALJ properly considered Dr. Mullady's opinion, and "[s]ubstantial evidence cannot be based on fragments of the record." *Laskowski v. Apfel,* 100 F. Supp. 2d 474, 482 (E.D. Mich. 2000) (citing *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984) ("Substantiality of the evidence must be based upon the record taken as a whole.")). *See Webster v. Soc. Sec. Admin.*, No. 3:18-CV-00045, 2019 WL 1065152, at *20 (M.D. Tenn. Feb. 19, 2019), *report and recommendation adopted*, No. 3:18-CV-00045, 2019 WL 1058467 (M.D. Tenn. Mar. 6, 2019) (noting the court could not confidently conclude that the ALJ's ruling on the ultimate question of disability would stand had she properly analyzed the claimant's symptoms and the record as a whole). Significantly, it has been noted that if Dr. Mullady's findings were credited by the ALJ, a favorable decision for Plaintiff may have resulted via direct application of the grid. This is not to suggest that the Plaintiff is or is not disabled; rather, the Court is only highlighting that Plaintiff has demonstrated that she was prejudiced by the

ALJ's failure to directly and accurately address Dr. Mullady's opinion. *See Daniel v. Colvin*, No. 1:14-CV-775, 2015 WL 5530210, at *4 (S.D. Ohio Sept. 21, 2015) (rejecting a harmless error contention where the ALJ failed to consider a treater's opinion issued before the alleged onset date because such opinion was not patently deficient and, "if accepted by the ALJ, could very well result in a finding of disability").

A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion. *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir.2007). But "[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole,* 661 F.3d at 937 (internal quotation marks omitted); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013). In this case, the ALJ's failure to appropriately consider Dr. Mullady's opinion suggests that the disability decision was not based on substantial evidence. Therefore, a remand for further consideration of the Commissioner's final decision is warranted.

As noted, Plaintiff also contends that the ALJ erred in failing to limit her to sedentary work. Essentially, Plaintiff asserts that the ALJ should have weighed certain evidence more heavily in his analysis. The law is clear that a court cannot reweigh evidence considered by the ALJ. *See Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013) (internal quotations and citations omitted) ("Here, the [plaintiff] asks us to reweigh the evidence and substitute our judgment for that of the ALJ. We cannot do so. Even if we would have taken a different view of the evidence were we the trier of facts, we must affirm the ALJ's reasonable interpretation."). However, the Court has already determined that remand is appropriate due to the ALJ's flawed analysis of Dr. Mullady's opinion, which contains sedentary exertional limitations, and therefore,

26

once a new analysis of this opinion is conducted, the ALJ will be required to redetermine or further explain his decision that Plaintiff could perform light work, considering all of Plaintiff's impairments. Accordingly, the Court does not need to reach Plaintiff's claim regarding this issue.

## VI.  CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 20**] is **GRANTED IN PART**, the Commissioner's Motion for Summary Judgment [**Doc. 23**] is **DENIED** for the reasons stated herein**,** and the matter is remanded for further proceedings consistent with this decision.

**ORDER ACCORDINGLY**.

Debra C. Poplin
United States Magistrate Judge